IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID L. SPIVEY,              )
                             )
        Plaintiff,            )
                             )
v.                           )     CASE NO.: 2:16-cv-681-GMB
                             )     [WO]
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,  )
                             )
        Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff David L. Spivey filed this action on August 19, 2016, seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner")[1] terminating his disability benefits. Doc. 1. Spivey was previously found disabled as of June 27, 2003 due to a seizure disorder and awarded benefits. However, during a mandatory periodic review, the Commissioner determined that Spivey's condition had improved such that he was no longer disabled as of June 1, 2013. Spivey requested reconsideration, but the determination was upheld after a hearing by a state-agency disability hearing officer. Spivey then requested review and a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on October 17, 2014. Following that hearing, the ALJ issued a written decision denying Spivey's claims and upholding the termination of his benefits. The Appeals Council rejected Spivey's

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

subsequent request for review, making the ALJ's decision the final decision of the Commissioner.

With briefing complete, this case is now ripe for review pursuant to 42 U.S.C. § 405(g). The parties have consented to the entry of a final judgment by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama. Docs. 9 & 10. Based upon a review of the evidentiary record, the parties' briefs, and the relevant authority, the court finds that the Commissioner's decision is due to be REVERSED and REMANDED, as set forth below.

## I. STANDARD OF REVIEW

This court's review of the Commissioner's decision "is narrowly circumscribed." *Richardson v. Comm'r of Soc. Sec.*, 2017 WL 4366730, at *1 (N.D. Ala. Sept. 29, 2017). Its function "is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002)). To perform this review, the court must "scrutinize the record as a whole" to "determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *see also Johnson v. Astrue*, 2009 WL 1955305, at *3 (M.D. Ala. July 6, 2009) (citing *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986)) ("A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.").

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Even if the evidence preponderates against the Commissioner's findings, the court "must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied." *Richardson*, 2017 WL 4366730, at *2. "If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision." *Id.* (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991)).

## II. STATUTORY AND REGULATORY FRAMEWORK

The continued receipt of social security benefits is subject to mandatory periodic review. 20 C.F.R. § 404.1594(a) ("There is a statutory requirement that, if you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically."). A claimant's disability benefits may be terminated based upon, among other things, "a finding that there has been medical improvement in the claimant's impairment or combination of impairments[2] related to the claimant's ability to work and

---

[2] A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

the claimant is now able to engage in substantial gainful activity." *Pitre v. Comm'r of Soc.*

*Sec.*, 2014 WL 3417688, at *2 (M.D. Fla. July 14, 2014) (citing 42 U.S.C. § 423(f)(1)).

To make this determination, the Commissioner employs a multi-step sequential

evaluation process:

1.  Is the claimant engaging in substantial gainful activity?

2.  If not, does the claimant have an impairment or combination of impairments that meets or medically equals one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, App. 1 [the Listing of Impairments]?

3.  If not, has there been medical improvement with respect to the claimant's impairment(s)?

4.  If there has been medical improvement, is such improvement related to the claimant's ability to work?

5.  If there has been no medical improvement, or if any such improvement is unrelated to the ability to do work, do any of the exceptions of 20 C.F.R. §§ 404.1594(d) and (e) apply[3]?

6.  If medical improvement is related to the claimant's ability to work, or if one of the first group "exceptions" to medical improvement (*i.e.*, pertaining to a lack of medical improvement but success in or the availability of vocational therapy or technology) applies, are the

---

[3] The first group of exceptions to medical improvement set forth in subsection (d) include: (1) substantial evidence shows that the claimant is the beneficiary of advances in medical or vocational therapy or technology (related to the claimant's ability to work); (2) substantial evidence shows that the claimant has undergone vocational therapy (related to the claimant's ability to work); (3) substantial evidence shows that based on new or improved diagnostic or evaluative techniques the claimant's impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision; (4) substantial evidence demonstrates that any prior disability decision was in error; and (5) the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(d)(1)–(5).

The second group of exceptions to medical improvement set forth in subsection (e) include: (1) any prior determination or decision was fraudulently obtained; (2) the claimant does not cooperate with the Social Security Administration; (3) the Social Security Administration is unable to find the claimant; and (4) the claimant fails to follow prescribed treatment that would be expected to restore the claimant's ability to engage in substantial gainful activity. 20 C.F.R. § 404.1594(e)(1)–(4).

claimant's impairments, or combination of impairments, severe?

7. If an impairment is severe, can the claimant perform past relevant work?

8. If the claimant cannot perform past relevant work, considering the claimant's RFC, age, education, and past work experience, can the claimant perform other work existing in significant numbers in the national economy?

20 C.F.R. § 404.1594(f); *see also Pitre*, 2014 WL 3417688, at *3; *Johnson*, 2009 WL 1955305, at *1–2.

"To perform steps three through six, the ALJ must first determine whether the claimant has experienced medical improvement." *Johnson*, 2009 WL 1955305, at *2 (internal quotation marks omitted). Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on improvements in the symptoms, signs, and/or laboratory findings[4] associated with [the claimant's] impairment(s)." *Id.* Medical improvement related to the claimant's ability to work is defined as medical improvement coupled with "an increase in [the claimant's] functional capacity to do basic work activities." 20 C.F.R.

---

[4] Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g) (alteration to original). Symptoms are defined as "[the claimant's] own description of [his or her] physical or mental impairment." 20 C.F.R. § 404.1502(i) (alterations to original). Lastly, laboratory findings are defined as "one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." 20 C.F.R. § 404.1502(c).

§ 404.1594(b)(3) (alteration to original). Medical improvement that is not related to the claimant's ability to work "consists of medical improvement but no corresponding increase in the claimant's functional capacity to do basic work activities." *Johnson*, 2009 WL 1955305, at *2 (citing 20 C.F.R. § 404.1594(b)(2)).

In addition to evaluating medical improvement, to complete the multi-sequential process, "the ALJ must also determine the claimant's RFC." *Id.* at *3. "RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence." *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238–39 (11th Cir. 2004)).

"To terminate benefits, the Commissioner may not focus only on current evidence of disability, but must also evaluate the medical evidence upon which [the claimant] was originally found to be disabled." *Richardson*, 2017 WL 4366730, at *3 (internal quotation marks omitted). "To that end, '[a] comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement.'" *Id.* (quoting *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985)). Indeed, "[w]ithout a comparison of the old and new evidence, there can be no adequate finding of improvement." *Pitre*, 2014 WL 3417688, at *3.

## III. ADMINISTRATIVE PROCEEDINGS

By written decision dated September 10, 2007, Spivey was found disabled within the meaning of the Social Security Act as of June 27, 2003. R. 80–87. Spivey's disability was based on a seizure disorder that began when he was an infant, became inactive at an early age, and was exacerbated by head trauma in 1991. R. 25. Following a mandatory periodic review, the Commissioner found that Spivey was no longer disabled and

terminated his benefits as of June 1, 2013. R. 20, 88–89. Spivey challenged this determination, and on January 26, 2013 the ALJ issued a written decision upholding the termination of his disability benefits. R. 20–33. When the Appeals Council denied Spivey's request for review, the ALJ's decision became the final decision of the Commissioner for purposes of this appeal.

After considering the entire administrative record and applying the multi-step sequential evaluation process for the review of cessation cases, the ALJ made the following findings:

Spivey was 43 years old on June 1, 2013, the date his disability was found to have ended. R. 31. He has a high school education with some college education, and past relevant work experience as a truck driver helper, brick mason helper, and weigher. R. 31.

The ALJ identified the September 10, 2007 decision as the "comparison point decision" ("CPD"), which is the most recent favorable medical decision finding Spivey disabled. R. 21. At the time of the CPD, the ALJ determined that Spivey had the medically determinable impairment of "seizure disorder," that he was unable to perform any past relevant work, that he had the RFC to perform less than sedentary work, and that the occupational base was so severely eroded that no other jobs existed in significant numbers in the local or national economies that he could perform. R. 22 & 25. The ALJ further determined that, after the CPD through June 1, 2013, Spivey developed an additional

non-severe impairment of "history of seizures."[5] R. 22.

Employing the sequential evaluation process, at step one, the ALJ found that, through June 1, 2013—the date Spivey's disability was found to have ended—Spivey had not engaged in substantial gainful activity. R. 22. At step two, the ALJ found that Spivey does not have an impairment or a combination of impairments of listing-level severity. R. 23–25. At step three, the ALJ determined that Spivey has experienced medical improvement. R. 25–26.

Before proceeding to step four, the ALJ found that, as of June 1, 2013, Spivey has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that

> on a function-by-function basis, the claimant is not limited with sitting. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant cannot climb ropes, poles or scaffolds. The claimant can occasionally climb ladders, ramps and stairs. The claimant is not limited in the use of his extremities. The claimant suffers no postural limitations. The claimant can frequently work in humidity, wetness and extreme temperatures. The claimant can occasionally work in dusts, gases, odors and fumes. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery. The claimant cannot operate motorized vehicles.

R. 26. The ALJ then proceeded to step four, finding that Spivey's medical improvement is related to his ability to work because it resulted in an increase in his RFC.[6] R. 31.

Because the ALJ found that Spivey has experienced medical improvement related

---

[5] The ALJ also found that, after the CPD through June 1, 2013, Spivey developed the following non-severe impairments: status post bilateral foot surgery; status post lobectomy; depression with noncompliance; and tobacco abuse disorder. R. 22–23.

[6] In other words, the ALJ found that Spivey's RFC as of June 1, 2013 is less restrictive than his RFC at the time of the CPD. R. 31.

to his ability to work, he proceeded to step six[7] and determined that, as of June 1, 2013, Spivey's impairment was severe because it caused more than a minimal limitation in his ability to perform basic work activities. R. 31.  At step seven, the ALJ found that, as of June 1, 2013, Spivey could perform his past relevant work as a weigher.[8] R. 31.  Finally, at step eight, after consulting a vocational expert, the ALJ found that, as of June 1, 2013, when considering Spivey's age, education, work experience, and RFC, he is able to perform a significant number of jobs in the national economy, specifically those of a packager, store laborer, and janitor. R. 31–32.  Accordingly, based on these findings, the ALJ found that Spivey's disability ended as of June 1, 2013, terminating his benefits. R. 32.

## IV.  DISCUSSION

### A.    Issues Presented

Spivey presents two issues[9] for the court's review:

1.    Whether the ALJ erred as a matter of law in failing to apply the "medical improvement" standard properly; and

---

[7] Step four of the multi-step sequential evaluation process provides that, if the Commissioner determines that a claimant has experienced medical improvement and this improvement is related to the claimant's ability to work, then the Commissioner should proceed directly from step four to step six of the sequential evaluation process. *See* 20 C.F.R. § 404.1594(f)(4).

[8] The ALJ's finding on this issue, at least as articulated in his written decision, is somewhat confusing.  At one point in the decision, the ALJ states, "As of June 1, 2013, the claimant was able to perform past relevant work as a weigher."  Several sentences later, the ALJ makes the contrary finding that "the claimant was not able to perform past relevant work as of June 1, 2013." R. 31.  Despite this confusion, when viewing the ALJ's decision in conjunction with his exchange with the vocational expert during the October 17, 2014 hearing, the undersigned is confident that the ALJ's intended finding was that Spivey could perform his past relevant work as a weigher and his statement that "the claimant was not able to perform past relevant work as of June 1, 2013" was made in error. R. 31, 69.

[9] These are the "issues presented" by Spivey in his brief.  Any issue not raised before the court is deemed to have been waived. *See Dial v. Berryhill*, 2017 WL 459859, at *3 (M.D. Ala. Feb. 2, 2017) (citing *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (concluding in a social security case that issues not raised before the district court are waived)).

2.  Whether the ALJ erred in failing to articulate specific reasons for rejecting the opinions of Spivey's treating physicians.

Doc. 16.  The Government argues that the Commissioner's decision is supported by substantial evidence and should be affirmed. Doc. 17.  Having carefully considered the parties' arguments, the record, and the applicable legal authority, and for the reasons set forth below, the undersigned finds that the Commissioner's decision is due to be REVERSED and REMANDED for failure to apply the medical improvement standard properly.[10]

## B.  Analysis

Spivey argues that the ALJ erred as a matter of law in failing to apply the medical improvement standard properly.  Specifically, Spivey argues that the ALJ's decision was made in error because he "failed to describe and compare Mr. Spivey's seizures before and after his most recent favorable decision and ignored the consistent medical and nonmedical evidence of the frequency and severity of Mr. Spivey's seizures in reaching his decision."[11]

Doc. 16.  For the reasons explained below, the court agrees with Spivey and finds that the

---

[10] Because this case is remanded on this discrete issue, the court need not address the other issue raised in Spivey's brief. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1323 n.10 (11th Cir. 2015). That being said, even though the court is not reaching Spivey's additional arguments, the court expects that the Commissioner will consider those arguments on remand and will develop the record as necessary in areas not expressly considered in this opinion.  For example, the court anticipates that the ALJ will consider Spivey's argument regarding the ALJ's rejection of the opinions of his treating physicians.

[11] A careful reading of Spivey's brief suggests that he is challenging the ALJ's decision at both step two (whether the claimant's impairment meets or medically equals one of the impairments in the Listing of Impairments) and step three (whether the claimant has medical improvement) of the multi-step sequential evaluation process. *See* Doc. 16.  Spivey's briefing, however, fails to go beyond simply identifying step two as one of the steps of the multi-step sequential evaluation process that the ALJ arguably did not follow. Doc. 16.  Since Spivey presents no substantive argument related to the ALJ's finding that he does not have an impairment of listing-level severity, the court deems this issue waived and, thus, will not address it.

ALJ failed to apply the medical improvement standard properly and, thus, remand is warranted.

In the Eleventh Circuit, unless an exception applies, "there can be no termination of benefits unless there is substantial evidence of [medical] improvement to the point of no disability." *McAulay*, 749 F.2d at 1500; *see also* 20 C.F.R. §§ 404.1594(a), 416.994(b). "[W]hether medical severity has decreased is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012) (internal quotation marks omitted); *see also Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). "The ALJ must 'actually compare' the previous and current medical evidence to show that an improvement occurred." *Klaes*, 499 F. App'x at 896 (quoting *Freeman*, 739 F.2d at 566). If the ALJ "fails to evaluate the prior medical evidence and make such a comparison," the court "must 'reverse and remand for application of the proper legal standard.'" *Id.* (quoting *Vaughn*, 727 F.2d at 1043).

The court finds that the ALJ did not adequately compare the prior medical evidence to the current medical evidence in Spivey's case.[12] The discussion of medical improvement in the ALJ's decision is rather brief, consisting of essentially three paragraphs, one of

---

[12] Although Spivey's brief includes two perfunctory sentences that arguably challenge the ALJ's failure to compare his cognitive impairment before and after the CPD, the medical improvement discussion in this opinion is limited to the comparison of prior and current medical evidence of Spivey's physical impairment, *i.e.*, his seizure disorder, as that was the only impairment assigned to Spivey in the CPD, and the current ALJ decision finds that Spivey suffers from no cognitive impairment at all—a finding he does not meaningfully challenge on appeal.

which simply summarizes the ALJ's findings in the prior CPD. R. 25. When the ALJ actually addressed the prior medical evidence, he spoke generally of "[m]edical evidence at that time [*i.e.*, the time of the CPD]," specifically referring to (1) records from Dr. C. Tompkins, M.D. that cover treatment from February 12, 2003 through July 13, 2007, which "revealed treatment for seizure disorder"; (2) a letter from Dr. Tompkins dated December 16, 2004, which stated that Spivey had a "longstanding seizure disorder and continues to experience seizures despite medications," that this disorder significantly restricts the type of work that Spivey can perform, and that Spivey cannot seek any gainful employment; (3) a later "statement" from Dr. Tompkins that Spivey's blood levels of Dilantin did not correspond with his dosage; (4) that, in 2006, Spivey experienced at least 60 "episodes"; (5) that Spivey's prescribed medications did not prevent his seizures and, in Dr. Tompkins' opinion, he could not drive or operate heavy machinery; and (6) physicians at UAB were unable to provide Spivey any treatment that would improve his conditions. R 25–26.

The ALJ's discussion of Spivey's prior medical evidence is generalized at best. The ALJ does not discuss Spivey's medical records from Crenshaw Community Hospital or his consultative examination with Dr. Mark Ellis, both of which occurred in 2005. R. 25–26. Nor does the ALJ discuss or even mention the types of seizures Spivey was having during the time period leading up to the CPD, the frequency of those seizures (the ALJ only references "60 episodes"), the symptoms Spivey experiences with each type of seizure, or the effects of and recovery needed after Spivey experiences a seizure.

The ALJ's discussion of the current medical evidence is even more superficial. Indeed, the ALJ notes that Spivey underwent a lobectomy in 2009 that "significantly

improved" his seizure disorder, although he does not articulate precisely how. R. 26. Relying on what is identified only as "recent medical evidence," the ALJ noted that, "as long as [Spivey] remained compliant with his prescribed treatment, his seizure episodes are infrequent at best." But, again, the ALJ does not specifically identify this "recent medical evidence," the "prescribed treatment" regime to which he is referring, what specific number of seizures quantifies as "infrequent," and what evidence supports the conclusion that, as of June 1, 2013, Spivey's seizures are "infrequent" when compared to the prior medical evidence. R. 26.

The ALJ notes that, at "one point," Spivey "denied having any grand mal episodes within the previous one to two years"; that there is "no evidence that his medication caused any side effects"; that he has a valid driver's license; and that he maintains a lawn care and livestock business for both himself and his neighbor. R. 36. Again, however, this "comparison" is devoid of any specific discussion of Spivey's medical records from Dr. Lawrence Ver Hoef, his treating neurologist, or Dr. Tompkins. The ALJ also does not specifically discuss the records from Drs. Warren G. Brantley, C. Robertson, or R. Whitney. Yet these records reflect that Spivey had a generalized tonic-clonic seizure in May 2010 (R. 368), that he still experiences simple partial seizures at the rate of 2.5 per month as of July 2012 (R. 363), that Spivey reported in May 2013 to Dr. Brantley that his last seizure was in March 2013 (R. 387), that Spivey reported in May 2013 to Dr. Robertson that his last two seizures were in March and April of that year and that his April seizure was tonic-clonic with a loss of consciousness (R. 390), that Dr. Ver Hoef noted as of August 2013 that Spivey was still experiencing simple partial seizures at the rate of 2.5 per

month (R. 423), and that Spivey reported to Dr. Tompkins in May 2014 that his last seizure was in February of that year (R. 264).

The ALJ did not specifically discuss any of this evidence or attempt to compare it to Spivey's prior medical evidence. To the contrary, it appears that the ALJ ignored this evidence in characterizing Spivey's "seizure episodes as infrequent at best." R. 26. And, even with the medical evidence the ALJ did discuss, he did not include citations to the specific medical evidence that support his conclusions or adequately explain how the "recent medical evidence," when compared to the prior medical evidence, suggests or indicates that Spivey has medically improved such that his disability should end. While the Commissioner contends that the ALJ did engage in a thorough and specific discussion of the current medical evidence, a review of the ALJ's decision shows that he did not do so in the context of his medical improvement finding. Rather, this discussion, which is devoid of any actual comparison with the prior medical evidence, was a compontent of the ALJ's RFC finding. R. 26–30.

Accordingly, because the ALJ did not "actually compare" the previous and prior medical evidence to show that a medical improvement has occurred, the court cannot evaluate whether the ALJ's decision is based on substantial evidence. Thus, the ALJ's decision must be reversed and this case remanded for application of the correct legal standard for finding medical improvement. *See Klaes*, 499 F. App'x at 896–97; *Gavin v. Comm'r of Soc. Sec.*, 2016 WL 3226436, at *5 (M.D. Fla. June 13, 2016) (finding that, when an ALJ fails to compare prior and current medical evidence, the decision must be reversed and the case remanded for application of the proper legal standard); *see also*

*Freeman*, 739 F.2d at 566; *Vaughn*, 727 F.2d at 1043.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED with the following instructions:

1.      The Commissioner shall reevaluate whether Spivey has medically improved to the point of being no longer disabled, making sure to compare the prior medical evidence with the current medical evidence and to articulate the specific findings and reasoning to support the decision reached on this issue;

2.      If appropriate, reevaluate the medical opinions; and

3.      Take such other action as may be necessary to resolve this claim properly.

A final judgment consistent with this opinion will be entered separately.

DONE this 29th day of March, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE